**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| PlayNation Play Systems, Inc. d/b/a GORILLA PLAYSETS, | |
| Plaintiff, | Civil Action File No. 1:14-CV-01046-RWS |
| v. | |
| Velex Corporation d/b/a GORILLA GYM, | |
| Defendant. | |

# PlayNation Play Systems, Inc.'s Brief in Support of its Motion for Partial Summary Judgment

"Look, me and the McDonald's people got this little misunderstanding. See, they're McDonald's, I'm McDowell's. They got the Golden Arches, mine is the Golden Arcs. They got the Big Mac, I got the Big Mick. We both got two all-beef patties, special sauce, lettuce, cheese, pickles and onions, but their buns have sesame seeds. My buns have no seeds."

Cleo McDowell to Prince Akeem in *Coming to America* (1988).

PlayNation Play Systems, Inc. manufactures and sells children's

playground equipment under the mark GORILLA PLAYSETS. Velex

Corporation manufactures and sells children's playground equipment under

the mark GORILLA GYM. Both companies sell belt swings, toddler swings,

— 1 —

and trapeze bars and rings. When sold as a set, the GORILLA PLAYSETS products are intended to be used outdoors while the GORILLA GYM products are meant to be used indoors. However, the belt swings, toddler swings, and trapeze bars and rings are also sold individually by each company, and each company's swings, bars, and rings can attach to each other's "core unit." In other words, only the buns are different.

This Court should grant partial summary judgment to PlayNation, the senior user and owner of the federally registered GORILLA PLAYSETS trademark, because there are no questions of material fact for which a genuine issue remains to be tried: Velex is using the nearly identical mark for nearly identical goods, which is likely to cause confusion.



GORILLA PLAYSETS and GORILLA GYM toddler swings hanging from a GORILLA PLAYSETS "core unit." Can you tell which is which? Answer below.



GORILLA PLAYSETS and GORILLA GYM belt swings. Can you tell which is which? Answer below.

**Answers:** The GORILLA PLAYSETS toddler swing is the one on the left. The GORILLA PLAYSETS belt swing is the one on the right.

— 2 —

## Statement of Facts

### *PlayNation and its GORILLA PLAYSETS Trademarks*

PlayNation, a Georgia corporation with its principal place of business in Canton, Georgia, is one of the world's leading manufacturers of children's playground equipment.[1] PlayNation manufactures and sells its products under the PLAYNATION®, GORILLA PLAYSETS®, PLAN-IT PLAY®, PLANET PLAYGROUNDS®, and SWINGWORKS® brands.[2] PlayNation's products generally—and its GORILLA PLAYSETS products in particular—have achieved fame and notoriety for their safety, durability, beauty, and value.[3]

PlayNation has continuously and extensively used the GORILLA PLAYSETS mark in commerce since at least 2002 to uniquely identify children's playground equipment and related accessories.[4] PlayNation has more than 130 authorized retailers selling its GORILLA PLAYSETS products

---

[1] Declaration of Jeff Robertson (Robertson Decl.) at ¶ 3.

[2] Robertson Decl. at ¶ 5.

[3] Robertson Decl. at ¶ 7.

[4] Robertson Decl. at ¶ 8.

throughout the United States.[5]

Three federally registered trademarks owned by PlayNation are relevant to this case:

(1)     GORILLA PLAYSETS (words) (Reg. # 2,834,525);

(2)     GORILLA PLAYSETS (design plus words) (Reg. # 2,862,694); and

(3)     GORILLA PLAYSETS (design plus words) (Reg. # 4,596,310).

The first two were registered in 2004 in International Class 28 (games and playthings) for "playground equipment constructed of wood, plastic, and rope used for swinging, sliding and climbing." The third was registered in 2014 under the same Class for "kits for building outdoor play equipment; playground equipment, namely, swing sets, slides, climbing units, swings, see saws, punching bags, punching balls, play telescopes, and rideable toys." These registrations establish a prima-fascia case for the validity of the GORILLA PLAYSETS trademarks, PlayNation's ownership of the marks, and PlayNation's exclusive right to use the marks in commerce and in connection with the goods and services specified in the registrations and on related goods.[6]  The registrations also constitute nationwide constructive notice of

---

[5] Robertson Decl. at ¶ 9.

[6] 15 U.S.C. §§ 1057(b) & 1115(a).

PlayNation's claim of ownership of the marks.[7] Further, the first two registrations (nos. 2,834,525 and 2,862,694) are incontestable under 15 U.S.C. § 1065,[8] thus the registrations constitute conclusive evidence of the validity of the registered marks and of the registration of the marks, PlayNation's ownership of the marks, and PlayNation's exclusive right to use the marks in commerce.[9]

PlayNation also owns the domain name gorillaplaysets.com, which PlayNation registered on January 9, 2001.[10] Since at least 2002, PlayNation has continuously used the domain name to identify and promote its GORILLA PLAYSETS brand children's playground equipment.[11]

PlayNation sells its GORILLA PLAYSETS products in many ways: through direct sales to the public on the Internet via gorillaplaysets.com;

---

[7] 15 U.S.C. § 1072.

[8] Under 15 U.S.C. § 1065, five years after registering a mark, the holder may file an affidavit of secondary meaning and have the mark declared "incontestable," at which time its validity is presumed. PlayNation filed combined Sections 8 & 15 declarations of use and incontestability in 2010 for Reg. Nos. 2,834,525 & 2,862,694. Declaration of John Bowler (Bowler Decl.) at Exhibits 3 & 4.

[9] 15 U.S.C. § 1115(b).

[10] Robertson Decl. at ¶ 10.

[11] *Id.*

through "big-box" retailers like Walmart, Home Depot, Toys R Us, and Costco and their respective websites; through middle-market retailers and their respective websites; and through smaller "mom-and-pop" stores and Internet-only businesses.[12]

Since 2002, when PlayNation adopted and first used the GORILLA PLAYSETS mark, PlayNation has prominently used and promoted the mark through extensive nationwide and local advertising, marketing, and sales of playground equipment and related accessories.[13] PlayNation's advertising, marketing, and promotional efforts have included Internet advertising, email campaigns, direct mail, trade shows, point-of-sale materials, and direct sales pitches.[14] PlayNation's advertising and marketing efforts supporting its GORILLA PLAYSETS marks are widely circulated throughout the United States.[15]

PlayNation has invested and continues to invest substantial time, resources, and efforts in advertising, marketing, and promoting the

---

[12] Robertson Decl. at ¶ 11.

[13] Robertson Decl. at ¶ 12.

[14] Robertson Decl. at ¶ 13.

[15] Robertson Decl. at ¶ 15.

GORILLA PLAYSETS marks and in developing substantial goodwill in the marks.[16] Since 2002, PlayNation has spent over $2 million advertising and promoting its GORILLA PLAYSETS products and has generated almost $100 million in revenue from the sale of those products during that time.[17] As a result, there is widespread public recognition of the GORILLA PLAYSETS marks as a source of playground equipment.[18] The GORILLA PLAYSETS marks are highly significant indicators of PlayNation's goods.[19] The GORILLA PLAYSETS marks are an invaluable asset, serving as a symbol of the quality goods offered by PlayNation and of PlayNation's goodwill.[20]

### *Velex's Infringement of the GORILLA PLAYSETS marks*

Velex, a Massachusetts corporation with its principal place of business in Cambridge, Massachusetts, was founded in June 2012.[21] Like PlayNation, it

---

[16] Robertson Decl. at ¶ 14 & 16.

[17] Robertson Decl. at ¶ 16.

[18] Robertson Decl. at ¶ 17.

[19] Robertson Decl. at ¶ 18.

[20] Robertson Decl. at ¶ 19.

[21] Bowler Decl. at Exhibit 7.

manufactures and sells playset equipment for children and related products.[22] Since November 21, 2012, Velex has been using in commerce a GORILLA GYM mark that is confusingly similar to PlayNation's GORILLA PLAYSETS marks.[23]

Velex owns federal trademark registration number 4,463,558 for the word mark "GORILLA GYM." The registration is in Class 28, the same class of goods as PlayNation's GORILLA PLAYSETS mark. Issued on January 7, 2014, Velex's registration is for a word mark for "exercise doorway gym bars."[24] But Velex uses the GORILLA GYM mark beyond the listed gym bar—the "core unit" as Velex likes to call it—and offers a "Kids Package" that includes, along with the gym bar, a belt swing, trapeze, rope, rings, and ladder.[25] Each item sold with the gym bar is also sold separately[26] and, as an additional add-on accessory, Velex also offers a toddler swing.[27]

---

[22] Velikin Dep. at 37:18–38:1, 26:5–16, 70:7–72:21, 75:12–74:4, 143:12–144:3.

[23] *See* Bowler Decl. at Exhibit 8.

[24] *Id.*

[25] *See* n.22, *supra*.

[26] Velikin Dep. at 37:18–38:1; 114:4–6; 228:1–229:8.

[27] Velikin Dep. at 76:5–11.

Before applying to register "GORILLA GYM," Velex, without assistance from legal counsel, conducted a trademark search of both Google's and the Trademark Office's search engines searching for the word "gorilla."[28] Velex specifically focused its attention on registrations it found in Class 28, the







class under which PlayNation's GORILLA PLAYSETS marks are registered, and Velex admits it "must have come across" PlayNation's GORILLA PLAYSETS marks in the Trademark Office's records.[29] Velex has also adopted a logo, which it has not registered with the Trademark Office, that is confusingly similar to PlayNation's GORILLA PLAYSETS registered trademarks.

Velex's sells its products through its website, at www.gorilla-gym.com, as well as through Amazon and eBay.[30] Velex is also actively meeting with, and hopes to have its products being sold in, big-box retailers—including Walmart, Academy Sports, and Dick's Sporting Goods—and mom-and-pop

---

[28] Alexandrov Dep. at 66:14–68:4, 69:1–72:5.

[29] Alexandrov Dep. at 71:7–18.

[30] Velikin Dep. at 83:7–12, 116:9–10, 165:2–166:9, 193:9–22, Alexandrov Dep. at 112:12–17, 111:9–112:17.

stores soon.[31] Velex's considers its target customer base to be broad, and it prominently promotes its GORILLA GYM products including its "Kids Package" on its website home page. Before this lawsuit, Velex's website said "GORILLA GYM Indoor Playground" with the slogan "Swing, Climb, Play All Day!"[32] After being sued, Velex deleted "Indoor Playground" from its website and added "Fitness For All Ages."[33] Velex has also promoted its children's products as being used in both indoor and outdoor environments (by attaching the company's "core unit" to an exterior doorway).[34]

Velex advertises its GORILLA GYM mark in much the same manner as PlayNation does its mark: through its own website, www.gorilla-gym.com, Internet advertising (including keyword ads on Google and Amazon, and on Facebook), and traditional print (magazine) ads.[35] Velex even runs commercials on children's television stations Nickelodeon, Qubo, and The

---

[31] Alexandrov Dep. at 113:8–118:4.

[32] Declaration of Niall Cronnolly (Cronnolly Decl.) at Exhibit A.

[33] Cronnolly Decl. at Exhibit F.

[34] Cronnolly Decl. at Exhibits B & C.

[35] Alexandrov Dep. at 112:12–17, 179:9–24, 183:9–24, 184:1–2; Velikin Dep. at 192:18–184:20, 189:2–8, 191:20–192:5.

Cartoon Network.[36]

Since launching in April 2013, Velex's sales have been very modest, but it expects to turn a profit in 2015.[37] The company believes that it will eventually grow to have $100 million in sales annually.[38]

PlayNation learned of Velex's infringement on March 11, 2014,[39] and filed this lawsuit on April 9, 2014.

### The Law Governing Summary Judgment

Summary judgment is designed "to secure the just, speedy and inexpensive determination of every action"[40] and is just as appropriate in a trademark-infringement and unfair-competition cases as in any other case.[41]

---

[36] Velikin Dep. at 185:11–186–9, 187:4–9, 188:2–21, 190:11–193:14; Alexandrov Dep. at 183:3–15.

[37] Alexandrov Dep. at 46:7–13, 173:10–22.

[38] Alexandrov Dep. at 45:21–46:5.

[39] Robertson Decl. at ¶ 20.

[40] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[41] *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 366 (11th Cir. 1997) (affirming grant of trademark holder's motion for summary judgment of permanent injunction for infringement); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1478 (11th Cir. 1991) (affirming grant of summary judgment finding likely of confusion ); *W. Union Holdings, Inc. v. E. Union, Inc.*, No. 1:06-cv-01408-RWS, 2007 U.S. Dist. LEXIS 66281, *32 (N.D.Ga Sept. 7, 2007) (Story, J.) (granting summary
(continued...)

"Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[42] Once the moving party has made a showing on all the essential elements of its case on which it bears the burden of proof at trial, the burden then shifts to the non-movant to set forth specific facts showing that there is a need for trial.[43] The party opposing summary judgment may not rest upon unsupported allegations or denials, but must present "significant, probative evidence demonstrating the existence of a triable issue of fact."[44]

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[45]A

---

[41](...continued)
judgment of trademark infringement).

[42] *Stephens v. Trust for Pub. Land*, 479 F. Supp. 2d 1341, 1346 (N.D. Ga. 2007).

[43] *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995).

[44] *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

[45] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

genuine issue as to the amount of damages does not preclude summary judgment on other issues.[46] Factual disputes that are irrelevant or unnecessary do not count.[47] One opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."[48] The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on which a jury could reasonably find for the non-movant.[49] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[50]

## Argument & Citation of Authority

### I.  The Court should award summary judgment on PlayNation's claim for infringement of a registered trademark (count one).

The same legal standards apply to trademark-infringement and unfair-competition claims under the Lanham Act and under Georgia common and

---

[46] *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989).

[47] *Anderson*, 477 U.S. at 248.

[48] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[49] *Anderson*, 477 U.S. at 252.

[50] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

statutory law.[51] PlayNation must show:  (1) that it has valid trademark rights in the GORILLA PLAYSETS mark; and (2) that Velex adopted a mark that is the same or confusingly similar such that consumers are likely to confuse the two marks.[52] The same likelihood of confusion arguments therefore apply to all of the instant claims. The Lanham Act also authorizes courts to order cancellation of a trademark registration as a remedy for infringement on grounds of likelihood of confusion.[53]

## A. PlayNation's GORILLA PLAYSETS mark is valid.

Since 2002, PlayNation has continuously and extensively used the GORILLA PLAYSETS mark in interstate commerce to identify its children's playsets and related goods.[54] PlayNation's trademark registrations create a rebuttable presumption of secondary meaning; further, because PlayNation's GORILLA PLAYSETS mark is "incontestable," its validity is conclusively

---

[51] *Caliber Auto. Liquidators, Inc. v. Premier Chrysler., Jeep, Dodge*, LLC, 605 F.3d 931, 935 (11th Cir. 2010).

[52] *Dieter v. B&H Indus.*, 880 F.2d 322, 326 (11th Cir. 1989).

[53] 15 U.S.C. § 1119; *see also* 15 U.S.C. § 1052(d) (registration should be refused if a mark is likely to cause confusion).

[54] Robertson Decl. at ¶ 10.

presumed.[55] Because it is undisputed that the GORILLA PLAYSETS mark is valid and has priority over the GORILLA GYM mark, the only remaining question before this Court is whether Velex's use of GORILLA GYM is likely to cause confusion.

### B. Velex's unauthorized use of GORILLA GYM is likely to confuse consumers.

Courts consider the following seven factors in assessing whether likelihood of consumer confusion exists: (1) the type, *i.e.*, strength, of the mark; (2) the similarity between the marks; (3) the similarity of the products the marks represent; (4) similarity of the parties' retail outlets and purchasers; (5) the similarity of advertising media; (6) the defendant's intent, and (7) any evidence of actual confusion.[56] Evaluating whether likelihood of confusion exists "entails more than the mechanistic summation of the number of factors on each side and involves an evaluation of the overall balance.[57] "No factor is pre-eminent, nor is the existence or lack of one factor determinative

---

[55] *Dieter*, 880 F.2d at 328.

[56] *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

[57] *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010).

of the outcome of an infringement action."[58] "[A] court must also take into account the unique facts of each case."[59] And "[t]he Court may also consider other probative evidence that does not fit within the enumerated factors in reaching its conclusion."[60]

### 1. PlayNation's GORILLA PLAYSETS marks are strong.

All trademarks fall into one of four categories which are, from weakest to strongest: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.[61] Strong marks receive greater protection than weak marks.[62] Suggestive marks subtly connote something about the goods so that a customer could use his or her imagination and determine the nature of the good.[63] Suggestive terms are inherently distinctive and thus require no proof of secondary meaning in order to be protected.[64]

---

[58] *Gold Kist Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291, 1296 (N.D. Ga. 1989).

[59] *Caliber Auto. Liquidators, Inc.*, 605 F.3d at 939.

[60] *Gold Kist Inc.*, 708 F. Supp. at 1296.

[61] *W. Union Holdings, Inc.*, 2007 U.S. Dist. LEXIS 66281, at *18.

[62] *Id.*

[63] *Id.* at 19.

[64] *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160,

(continued...)

The GORILLA PLAYSETS mark is at least suggestive.[65] It does not immediately convey descriptive information to consumers. The products sold under the mark are not designed for or used by gorillas. The mark requires, at a minimum, some imagination, thought, and perception to reach the conclusion that it is used in connection for the goods listed in the registration.

Incontestability enhances the strength of a mark for purposes of a likelihood of confusion analysis.[66] Because PlayNation's GORILLA PLAYSETS mark is incontestable, it is a mark whose strength is enhanced beyond the strength created by it merely being suggestive.[67] The strength of the GORILLA PLAYSETS mark is further reinforced by the fact that PlayNation has continuously and extensively used the mark for over 12 years, has invested substantial money and resources in national marketing, and has generated almost $100 million in revenue under the mark.[68]

---

[64](...continued)
1165 n.9 (11th Cir. 1982).

[65] *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980) ("as a trademark for refrigerators, the term 'Penguin' would be suggestive.)

[66] *Bd. of Regents v. Buzas Baseball, Inc.*, 176 F. Supp.2d 1338, 1351 (N.D.Ga. 2001).

[67] *Id.*

[68] *See Gold Kist Inc.*, 708 F. Supp. at 1297 (extensive promotion and
(continued...)

PlayNation's GORILLA PLAYSETS mark is entitled to extensive protection against its use on all related goods.[69]

### 2. Velex's GORILLA GYM mark is nearly identical.

This factor has been described as "really nothing more than a subjective eyeball test."[70] The marks are virtually identical. Both begin with the distinctive word "gorilla." The words "playset" and "gym" are synonyms—the playsets on which children play are often called "jungle gyms." The word "gym" in Velex's mark thus emphasizes rather than deemphasizes a connection with PlayNation.[71]

When viewed in their totality, the marks are nearly identical in appearance, sound, and the connotation created.

---

[68](...continued)
advertising over time "lend strength to the mark") .

[69] *Dieter*, 880 F.2d at 329.

[70] *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 504-05 (5th Cir. 1980).

[71] *See Safeway Stores*, 675 F.2d at 1165–66 (in case between SAFEWAY and SAFEWAY DISCOUNT DRUGS, holding "'Safeway' is the dominant theme" and the words "discount center" are "quite common and lend no distinctiveness" to the mark").

It should also be noted that PlayNation does not have the exclusive right to use the word "playsets" and Velex has no exclusive right to use the word "gym," and they both disclaimed any right to the exclusive use of those words in their respective trademark-registration applications.

### 3. PlayNation and Velex sell the same types of products.

There can be no genuine dispute that PlayNation and Velex are selling the same products. Their belt and toddler swings are indistinguishable and their trapeze bars and rings are functionally identical. The test here is "whether the goods are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods."[72]

The similarities between Velex's and PlayNation's playset products are the kind a reasonable consumer could possibly attribute to the same source.

### 4. PlayNation's and Velex's trade channels, methods and customers are the same.

This factor considers "where, how, and to whom the parties' products are sold."[73] Here, PlayNation and Velex sell and want to sell their children's playset equipment nationwide through the same retail outlets to the same consumers. And both company's customers have an interest in seeing children having fun and want to encourage an active lifestyle. Excluding the parties'

---

[72] *Frehling*, 192 F.3d at 1338.

Although PlayNation registered its marks in connection with particular playground equipment, its remedies "extend to any goods on which the use of an infringing mark 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods.'" *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 623 (5th Cir. 1963).

[73] *W. Union Holdings, Inc.*, 2007 U.S. Dist. LEXIS 66281, at *26.

respective "core unit," the parties accessories sell at similar price points.[74]

Since one can buy a GORILLA GYM swing and attach it to a GORILLA

PLAYSET playset, the parties compete for certain customers.

### 5. PlayNation and Velex advertise their products in the same media channels.

This factor looks to each party's "methods of advertising," rather than the

precise media used to advertise.[75]  Here, PlayNation and Velex also advertise

products under their respective marks using the same methods of

advertising.[76] Due to the national scope of the parties' advertising markets, it

is likely that PlayNation's customers would be exposed to Velex's advertising

and vice versa.[77]

### 6. Bad faith in Velex's adoption of the GORILLA GYM mark.

"[W]hile intent is of some probative value, particularly if a bad intent is

---

[74] *Compare* GORILLA PLAYSETS Deluxe Swing Belt, http://www.gorillaplaysets.com/Playset-Swing-Belt-p/04-0002.htm (last visited Jan. 16, 2015) (selling for $29.50) *with* GORILLA GYM Indoor Swing, https://gorilla-gym.com/product/indoor-swing/ (last visited Jan. 16, 2015) (selling for $29.95).

[75] *Gold Kist, Inc.*, 708 F. Supp. at 1301–02.

[76] *Compare* Robertson Decl. at ¶ 13 *with* n.35 & 36.

[77] PlayNation's vice president, Dave Seitz, recently saw a GORILLA GYM commercial while he was watching television with his children. Declaration of Dave Setz at ¶ 4.

shown, it is neither a necessary nor sufficient condition for determining the ultimate legal fact of the 'likelihood of confusion.'"[78] But at a minimum, Velex acted with intentional blindness; it admits that it "must have come across" PlayNation's GORILLA PLAYSETS mark in 2012 before adopting and seeking to register its GORILLA GYM mark.[79] Thus, this factor should weigh in favor of a finding of infringement.

### 7. Evidence of actual confusion is not necessary to establish a likelihood of confusion.

Although it may be the best or most important evidence when it exists, evidence of actual confusion is not required to find likelihood of confusion.[80] The required proof is likelihood of confusion, not actual confusion. At this moment, PlayNation is unable to establish whether there has been actual confusion between its and Velex's mark. But that is not unusual given the relatively short duration of Velex's infringing use and the company's relatively modest sales to date.[81] Further, "[i]f the plaintiff brings suit 'at once

---

[78] *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 847 (11th Cir. 1983).

[79] Alexandrov Dep. at 71:7–18.

[80] *Frehling*, 192 F.3d at 1340.

[81] *Gold Kist Inc.*, 708 F. Supp. 1291, 1302 (N.D. Ga. 1989) (acknowledging
(continued...)

to nip, if he can, the process in the bud,' his celerity may have prevented any confusion."[82]

Weighing all seven factors together, the totality of the circumstances compels a finding that likelihood of confusion exists as a matter of law. This Court should grant summary judgment of federal trademark infringement.

## II. The Court should grant summary judgment on PlayNation's claims for unfair competition, false designation of origin, and deceptive trade practices (Counts Two, Three, and Four).

The same likelihood-of-confusion test used for infringement of a trademark registration under 15 U.S.C. § 1114(1) applies to PlayNation's claims of unfair competition and false designation of origin under 15 U.S.C. § 1125 (Count Two), as well as its claims for unfair competition and trademark infringement under Georgia common law (Count Three), and deceptive trade practices under O.C.G.A. § 10-2-370 *et seq.*[83] Because PlayNation is entitled to summary judgment on its federal-trademark-infringement claim, it is also entitled to summary judgment on its claims for

---

[81](...continued)
it is extremely difficult to obtain evidence of actual confusion when the period of concurrent use is short); *Jellibeans*, 716 F.2d at 844 (discussing few reports of actual confusion could be expected when trademark owner acts quickly).

[82] 3A CALLMANN ON UNFAIR COMP., TR. & MONO. § 21:82 (4th ed.).

[83] *Caliber Auto. Liquidators, Inc.*, 605 F.3d at 935.

federal and state unfair competition, false designation of origin, and deceptive trade practices.

## III. The Court should issue a permanent injunction.

When there is ongoing trademark infringement, "complete injunctions against the infringing party are the order of the day."[84]

Someone seeking a permanent injunction must demonstrate (1) they have suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) an equitable remedy is warranted considering the balance of hardships between the parties; and (4) the public interest would not be disserved by a permanent injunction.[85]

There is a risk of irreparable injury when a showing of infringement is made, and irreparable injury is ordinarily presumed in favor of the trademark owner.[86] And there is not an adequate remedy at law to redress

---

[84] *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1336 (11th Cir. 1996); 15 U.S.C. § 1116.

[85] *Angel Flight of Ga. v. Angel Flight Am.,* 522 F.3d 1200, 1208 (11th Cir. 2008).

[86] *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D. Ga. 1995).

infringement.[87] The damage to the goodwill in PlayNation's GORILLA
PLAYSETS mark caused by Velex's infringement is impossible to quantify.[88]

PlayNation has invested substantial resources over 12 years in building
goodwill in its GORILLA PLAYSETS mark, which has resulted in almost
$100 million in revenue under the mark. In its short existence, Velex has sold
very modest sales and has yet to turn a profit. In balancing hardships, the
threatened harm to PlayNation by Velex's continued infringement outweighs
the threatened harm that any injunction may do to Velex.

Finally, a basic policy interest of trademark-infringement and unfair-
competition law is to protect consumers from confusion. The public "deserves
not to be led astray by the use of inevitably confusing marks."[89] A permanent
injunction enjoining Velex's use of GORILLA GYM or any confusingly similar
mark should be issued by this Court.

## IV. The Court should order cancellation of Velex's GORILLA GYM mark.

A court may order cancellation of a trademark registration, in whole or in

---

[87] *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989).

[88] Robertson Decl. at ¶¶24–25.

[89] *Angel Flight*, 522 F.3d at 1209.

part, when warranted.[90] Cancellation is warranted here because Velex's registration and use of the mark GORILLA GYM is likely to cause confusion with PlayNation's senior GORILLA PLAYSETS mark.

## Conclusion

PlayNation is entitled to summary judgment on its claims for federal trademark infringement and federal and state unfair competition, false designation of origin, and deceptive trade practices. PlayNation is also entitled to a permanent injunction and cancellation of Velex's trademark registration.

Respectfully submitted this 16th day of January 2015.

| | |
|---|---|
| s/ Marc B. Hershovitz | s/ John M. Bowler |
| Marc B. Hershovitz | John M. Bowler, Esq. |
| Georgia Bar No. 349510 | Georgia Bar No. 071770 |
| MARC B. HERSHOVITZ, P.C. | TROUTMAN SANDERS LLP |
| One Alliance Center, 4th Floor | 5200 Bank of America Plaza |
| 3500 Lenox Road | 600 Peachtree Street, N.E. |
| Atlanta, Georgia 30326 | Atlanta, Georgia 30308-2216 |
| 404-262-1425 | (404) 885-3000 |
| 404-262-1474 (fax) | (404) 885-3995 (fax) |
| marc@hershovitz.com | john.bowler@troutmansanders.com |

*Attorneys for PlayNation Play Systems Inc.*

---

[90] *See* 15 U.S.C. § 1119 (giving courts equitable jurisdiction to "rectify the register" and "order the cancellation of registrations"); *Park' N' Fly, Inc. v. Dollar Park & Fly*, 469 U.S. 189, 206 (1985).

**Certification of Font**

I certify that the this document has been prepared using Century Schoolbook, 13 point, as approved by LR 5.1(C).

<div style="margin-left: 50%;">

s/ John M. Bowler
John M. Bowler, Esq.
Georgia Bar No. 071770
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3995 (fax)
john.bowler@troutmansanders.com

</div>

**Certificate of Service**

I hereby certify that on January 16, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

<div align="center">

Robert M. Ward, Esq.
John M. Bowler, Esq.
Michael D. Hobbs, Esq.
Marc B. Hershovitz, Esq.

</div>

s/ John M. Bowler
John M. Bowler, Esq.
Georgia Bar No. 071770
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3995 (fax)
john.bowler@troutmansanders.com