## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| PLAYNATION PLAY SYSTEMS, INC., | Civil Action No. 1:14-cv-01046-RWS |
| Plaintiff, |  |
| v. | Jury Trial Demanded |
| VELEX CORPORATION, |  |
| Defendant. |  |

### VELEX' MEMORANDUM IN OPPOSITION TO PLAYNATION'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF VELEX' CROSS-MOTION[1] FOR SUMMARY JUDGMENT

Unfortunately, PlayNation's massive submission burdens the Court with verbiage and argument -- but presents little factual or legal analysis, and almost no pertinent facts[2]. PlayNation's attempts at clever analogical quips about (i) the (al-

---

[1] Velex advised PlayNation long ago that Velex would file for summary judgment. PlayNation simply beat Velex to the courthouse steps.

[2] For example, in pointing out that PlayNation's is a huge company from Georgia, and Velex is a tiny, two-man start-up by immigrants who are Harvard graduates, PlayNation's spends five (5) full pages pointing to its money, muscle and might. Fortunately, the Law is the same for everyone, and even for individuals of modest means like Messrs. Alexandrov and Velikin.

beit irrelevancy) of McDonalds' "Golden Arches"[3], and (ii) the lawyer's cynical manufacture of non-existent exhibits and staged photographs are no substitute for an objective, fair and proper analysis of the mandatory *Lone Star* factors. And, most fundamentally, the volume of PlayNation's non-evidentiary fluff does not constitute the legitimate weight of the evidence.[4]

## I. The Law on Cross-Motions for Summary Judgment

So as not to burden the Record, and inasmuch as the law on the granting of summary judgment motions as stated by PlayNation is substantially correct, it is thus respectfully incorporated by reference into the Velex' present cross-motion for summary judgment, and relied on herein for the granting of Velex' cross motion (See, PlayNation's Brief, Doc. 36-1, filed 1/16/2015, pages 11-13.)

The Court may deny a motion for summary judgment, and grant a cross-motion for summary judgment. See, for example, *Suntree Technologies, Inc. v. Ecosense Intern.*, 693 F. 3d 1338 (11th Cir. 2012); *Pitney Bowes, Inc. v. Mestre,*

---

[3] If anything, this case is – in spades – the summary judgment case of *Alaven Consumer Healthcare, Inc. v. DrFloras,* No. 1:09-CV-705-TWT, 2010 WL 481205 (N.D. Ga. Feb. 4, 2010); *aff'd,* 399 Fed. Appx. 545 (11th Cir. 2010) [granting defendants' motion for summary judgment of no likelihood of confusion].

[4] As the Court will also become aware, PlayNation appears to have given incomplete and/or inaccurate facts about the Velex toddler swing product that PlayNation had purportedly received. See attached Declaration of John Lane, showing that the depicted "toddler swing" did not and could not have come from Velex. And then, Play Nation doctored the photos to hide the varying rope length of the respective parties' swings – *i.e.*, to falsely make the products look somehow "compatible". They are not.

701 F. 2d 1365, 1366 (11th Cir. 1983).

And, moreover, a court may in an appropriate case grant summary judgment *sua sponte,* and in favor of the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

On the substantive law, PlayNation must prove that upon viewing the respective marks, logos, packaging and products, consumers would be likely to mistakenly believe that Velex and its goods and services are somehow affiliated with, sponsored by, or otherwise related to PlayNation. *Freedom Savs. and Loan Ass'n v. Way*, 757 F. 2d 1176, 1179 (11th Cir. 1985); *Sun Banks of Fla. Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 314 (5th Cir. 1981).

The Eleventh Circuit looks to seven (7) factors to determine whether use of an allegedly infringing mark would create a likelihood of confusion: (1) the type of the plaintiff's mark; (2) the similarity of the marks; (3) the similarity of the parties' products or services; (4) the similarity of the retail outlets and customers; (5) the similarity of advertising media used; (6) the existence of actual confusion; and (7) the defendant's intent. *Tana v. Dantanna's*, 611 F. 3d 767, 775 (11th Cir. 2010); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 366 (11th Cir. 1997). Of these factors, the type of mark and any evidence of actual confusion[5] are the most important. *Hi-Tech Pharms.,* 311 F. Supp. 2d at 1357.

The factor of the similarity of trademarks is to be determined based upon

---

[5] Not even PlayNation would argue that there is any evidence of actual confusion here.

the "sight, sound and meaning" of the respective terms. *Frehling Enterprises v. Int'l Select Group*, 192 F. 3d 1330 (11th Cir. 1999).

In determining "similarity of the marks", the marks may not be dissected and the parts then analyzed separately. The similarity of the marks is "determined by considering the overall impression created by the mark[s] as a whole rather than simply comparing individual features of the marks." *John H. Harland Co.*, 711 F.2d at 975 (quoting *Exxon Corp. v. Tex. Motor Exch., Inc.*, 628 F.2d 500, 504-05 (5th Cir.1980)). To determine the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling,* 192 F.3d at 1337; *AWGI*, 2013 WL 1181450 at *4. "[L]ikelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark." *In re Nat'l Data Corp.,* 753 F.2d 1056, 1058 (Fed.Cir.1985); *Mango's*, 844 F. Supp. 2d. at 1254-55; *Caruso,* 994 F. Supp at 1460 ("It is axiomatic that a mark should not be dissected and considered piecemeal.") (internal citations omitted).

Marks are not rendered confusingly similar by the mere fact that they incorporate common components. *Mango's*, 844 F. Supp. 2d. at 1254-55; *Caruso,* 994 F. Supp at 1460 ("The mere fact that both marks incorporate a form of the common word `bongo' does not render the marks similar."); *see also AWGI,* 2013 WL 1181450 at *4 (use of identical words does not render marks confusingly similar).

Eleventh Circuit precedent and the USPTO's Principal Register are both

rife with examples of marks that share much more distinctive common compo-
nents than those here, but are not found to be confusingly similar. *Freedom
Savs*,. 757 F.2d at 1183 (FREEDOM SAVINGS AND LOAN not confusingly
similar to FREEDOM REALTY); *Sun Banks*, 651 F.2d at 318 (SUN BANKS
not confusingly similar to SUN FEDERAL); *AWGI,* 2013 WL 1181450
(SMART MOVE not confusingly similar to SMART MOVE); *Mango's*, 844
F. Supp. 2d. at 1255 (MANGO'S TROPICAL CAFÉ note confusingly similar
to MANGO MARTINI); *Caruso*, 994 F.Supp. at 1460-61 (BONGO and
BONGOS CUBAN CAFÉ have distinct appearances and sounds and are there-
fore not confusing); *Cord: Use Cord Blood Bank, Inc. v. CBR Sys. Inc.* (M.D.
Fla. 2012) (BANK WITH THE LEADERS not confusingly similar to BANK
WITH THE BEST); *see also Toro Co. v. GrassMasters Inc.*, 66 U.S.P.Q.2d
1032 (T.T.A.B. 2003) (LAWN-BOY for lawnmowers not confusingly similar
to LAWN PUP for lawnmowers); *Keebler Co. v. Murray BakeryProds.*, 9
U.S.P.Q.2d 1736 (Fed. Cir. 1989) (PECAN SANDIES not confusingly similar
to PECAN SHORTIES where both were used for pecan cookies).

## II. PlayNation's Fabricated Photographs are not Admissible or Probative Evidence

In contrast to PlayNation's false and fabricated photographs, here is a fair
side-by-side showing, and which appeared (and with the obvious intention of the
scholar's showing the trademark logo contrasts that are present here) in the popu-
lar, and presumably neutral, Georgia IP blog.



Gorilla Playsets Navigator
w/ Timber Shield Cedar Play Set

http://georgiaiplit.blogspot.com/2014/04/gorilla-warfare-initiated-on-playsets.html

### III. PlayNation's Irrelevant Web Searches

Velex also objects to the admissibility and/or probative value of PlayNation's Exhibit 5, wherein Play Nation cites to purported searches made for the terms "gorilla" and "playground". However, PlayNation does not own a trademark for "gorilla playground", nor does it own the trademark "gorilla" for the Class 028 goods according to the uspto.gov website. PlayNation also cites the term "gorilla gym indoor playground", which Velex no longer uses and have not used since April or May of 2014.

PlayNation's mark is "Gorilla Playsets" and Velex' mark is "Gorilla Gym". In the Second Declaration of Kiril Stefan Alexandrov, Mr. Alexandrov provides examples of legitimate searches that would be made by real consumers. It should

be noted that the sophisticated algorithms by Google®, eBay®, Amazon®, and even PlayNation's cited Duckduckgo.com® search engine, do not see any overlap either in name, mark or product -- and indeed, often make recommendations that support Velex' case that the respective products are very different as perceived by the greater consumer, buying public. Simply put, PlayNation sells "outdoor playground sets" just as their website proclaims, and all of the web search traffic reflects this truth when the relevant semantic searches are made by real customers searching for Play Nation's products.

## IV. <u>The Uncontestable Facts</u>

Accordingly, the unvarnished facts that PlayNation does not reveal to the Court are:

- Velex has a Federal Registration that was issued after careful examination by the United States Patent and Trademark Office[6], and which took into account (i) all of the numerous Class 028 section "gorilla-mark" designations, including (ii) the solitary, prime trademarked "Gorilla" word by another entity (not PlayNation);

- Velex sells adult exercise equipment[7] that fits into the door frame of a house and includes a child swing package that hangs from the adult exercise equipment (as frame), and in contrast PlayNation sells multiple-swing sets;

---

[6] PlayNation could have filed before the expert administrative body (the USPTO) a Petition to Cancel Velex' trademark registration, but instead chose a jury of laymen as the forum.

[7] Curiously, PlayNation contends that only 30% of Velex' sales have been for the "kids' package" that can only be used by attaching it to the adult exercise core unit (*i.e.*, adult fitness, yoga, boxing), but nonetheless PlayNation is requesting cancellation of Velex' federal registration, where 70% of the sales and products have

- Velex equipment is always used **<u>inside</u>** a house, and PlayNation's equipment is always used **<u>outside</u>** of a house – *i.e.,* play yard area;

- PlayNation's submission to the Court is misleading, inasmuch as the Gorilla Gym equipment is attached to a doorway, which by normal designations is considered a part of the house, and not a part of the yard;

- Velex' exercise equipment costs less than $150 dollars, and PlayNation's playground equipment costs thousands of dollars;

- The channels of commerce are distinctly different, as Velex sells entirely via the Internet and TV infomercials, and whereas PlayNation sells through a vast dealer network[8];

- Use of Velex' equipment is likely adult-supervised and use of PlayNation's equipment is likely <u>not</u> adult-supervised, and moreover, Gorilla Gym equipment cannot be installed on a doorway except by an adult.

- Both parties clearly label their goods with their different trademarks, "Gorilla Gym®" versus "Gorilla PlaySets®", and moreover with their house marks "Velex" versus "PlayNation". Yet further, the words "Gym" and "Playset" are not interchangeable. "Gym" reflects fitness, which is at the core of Velex' core unit, and constitutes an updated and safer pull-up bar. Also, there are multiple design element differences between their logos[9].

---

nothing whatsoever to do with PlayNation's channels of commerce.

[8] "Become a Dealer" http://www.gorillaplaysets.com/Become-a-Swing-Set-Dealers/35.htm

[9] In addition, of the "gorilla"-termed trademarks in the Class 028 category at the USPTO and beyond, all have a gorilla or a gorilla face graphic asset as part of the logo; so, the marks before the Court are no different from all these other "gorilla" appended marks. See appended Declaration of Alexandrov. In addition to the very different color scheme, Velex has not copied the design of the PlayNation house mark in any respect whatsoever, as evidenced by the communications and directions given to the competing designers at 99 designs, see attached Declaration of

- the decision to purchase is carefully made and the respective consumers are relatively sophisticated, because safety is an important factor in exercise equipment, and in children using outside and often unsupervised swing sets. Any parent looking at each party's website can clearly tell that Gorilla Playsets is based in Georgia and Gorilla Gym is based in Cambridge, Massachusetts. There can be no confusion possible when one looks at each company's website in terms of the clearly stated origin of the product offerings. In this day and age of sophisticated e-commerce buyers, it is impossible to claim confusion.

- PlayNation's product is not unique or unusual. In contrast, Velex' novel invention has created an entirely new market category, where none existed before – *i.e.*, significant indoor fitness options within one's own doorway(s). It is simply impossible to compare copycat "apples", such as outdoor playgrounds by Gorilla Playsets amidst dozens of others selling outdoor playgrounds, with the brand new "orange" created by Velex.

Accordingly, under analysis of the several *Lone Star* factors, it is Velex who is entitled to summary judgment, and specifically to a ruling of **non**-infringement.

## V. <u>Truthful Pictures are Worth a Thousand Words</u>

Indeed, PlayNation's' fraudulent "photographs" seek to imply that the respective consumers would supposedly view: (i) dissected portions of the parties' equipment, (2) put back together in a falsified side-by-side relationship, and (3) in supposedly the same display at a retailer or dealer. PlayNation's manipulative and prejudicial photograph exhibit (See PlayNation's Brief, page 2) is well over-the-

---

Velikin tracing the considerable time, expense and care used by Velex in the design and development of its unique logo.

line[10].

Here is an **accurate** depiction of Velex "core unit" exercise bar, in use:



Here is the child attachment to the core exercise equipment:



---



[10] Even PlayNation's use of the term GORILLA PLAY SETS "core unit" is a misleading fabrication. PlayNation has no "core unit" – manifestly, it sells $4,000 swing sets.

https://gorilla-gym.com/tag/children/

In contrast, the Court is respectfully referred to a truthful depiction of Play-Nation's outdoor swing set, in use:

http://www.gorillaplaysets.com/Treasure-Trove-II-Swing-Set-p/01-1034-ap.htm




**List Price: $6,099.00**
**Our Price: $4,199.00**
*You save $1,900.00!*

These real, non-attorney[11] photographs showing the actual environment and usage of the equipment immediately reveal that there is no similarity whatsoever in the goods.

**VI. <u>The Marks are Different</u>**

Not all gorillas are created equally. And, the points of distinction here are rather obvious. Hence, the Public has been clearly advised as to the source of origin of the respective parties' goods.

Attached hereto is the Declaration of Kiril Alexandrov, setting forth numer-

---

[11] Manifestly, photographs that are created by lawyers especially for litigation are inadmissible under any standard of evidence -- and moreover, are to be rejected as unfairly prejudicial, which is (of course) PlayNation's entire intent and purpose.

ous points of distinction between the parties' respective graphic presentations to the purchasing public.



| Velex' Gorilla | PlayNation's Gorilla |

There are at least 4 major, categorical differences that show no likelihood of confusion:

1) **Color:** Gorilla Gym blue and orange are contrast colors usually used to connote <u>energy and movement</u>, which are the core traits of exercise and fitness. Gorilla PlayNation's green color, just like its website, connotes <u>the outdoors</u> -- a common use of the color green (from environmentalists onward), and which would be expected by the Public to be typical of a company that manufactures outdoor playground equipment.

2) **The type of Gorilla** is very important as a unique qualifier:

a) the Gorilla Gym gorilla not only serves the purpose of functioning graphically as the letter "Y", but his grip on the letters "O" and "L" show that the Velex' products originate from a pull-up bar. The form

of his body is that he is doing what is commonly called a "pike position pull-up"[12]. Velex' "fit" Gorilla has chiseled abs, a larger torso than hip ratio, thereby to reflect an athletic and fit body shape, including over-sized muscles. His legs are longer than regular gorilla legs in relation to his body to reflect a closer connection, from the simply Simian identity, to that of a very fit human being. In contrast, the Gorilla Playsets gorilla has no unique position or shape; it is merely the usual average gorilla;

b) the Gorilla Gym gorilla is wearing fitness clothing (muscle shirt and workout shorts) in the energetic blue and orange contrast colors. The Gorilla Playsets gorilla seems to be *au natural* with no unique clothing – *i.e.*, just like a usual average gorilla.

c) Gorilla Gym utilizes the primacy of the two words, and there is more emphasis and space on the word "Gym", thereby signifying Velex' product and Velex' most important identity. Instead, Gorilla Playsets emphasizes just the word "Gorilla", greatly reduces the word "playsets" and there is little expression of any gorilla-like features employed or expressed by their gorilla -- *i.e.,* no swinging or action,

---

[12] Again, please see Velex' communication history with the 99Design timeline, as set forth in the attached Declaration of Velikin, to note how important this fitness position was to Velex and to Velex' product line's identity.

no strength, no menace, but simply an average gorilla that happens to have been placed next to some words, one of the words coincidentally being "gorilla".

d) It is impossible to replace Velex' unique "Fit" Gorilla with any other animal, for numerous reasons. One major reason is that Velex' intent is to display the uniqueness of Velex' products' much like the "Energizer Bunny", the "Pillsbury Doughboy", or "Mr. Clean". Velex' "Fit" Gorilla is part of the product and part of the identity of swinging on a pull-up bar like a gorilla. Velex even has a Gorilla in its infomercials, and wherein the Gorilla thus serves a real purpose. However, Gorilla Playsets' gorilla is almost interchangeable and serves no unique purpose, outside of perhaps aligning itself with the word "gorilla". Velex would thus respectfully posit that PlayNation's gorilla is interchangeable with <u>any other animal</u> without any deleterious effect to their brand. For example, PlayNation could easily call their product "Panda Playsets" with no visible difference in identity -- unless they actually had a unique Panda and also made this Panda do something reflective of their products and company. At this time, PlayNation's gorilla is devoid of any **<u>kinetic meaning</u>** outside of hav-

ing been born a gorilla and is moreover devoid of personality and attitude. This is in great contrast to Velex' "Fit" Gorilla.

3) **<u>Font choice:</u>** Gorilla Gym font is modern, chiseled and bold—designed and chosen to reflect athleticism, fitness, and confidence, which are the end results of exercise. Gorilla Playsets' font makes no effort to stand for anything, except average readability with slightly-rounded elements. PlayNation's font choice, much like their choice of gorilla design, once again shows arbitrary choice in contrast to Velex' <u>very arbitrary and meaningful</u> choices that are consciously designed to reflect Velex' product and company *raison d'etre*.

4) The contrasting words "gym" and "playsets" have very different meanings and are not in any respect synonymous.

Thus, the sight, sound and meaning of the respective parties' presentations to the Public are distinctly different -- and according, fairly and objectively, there can be no likelihood of confusion.

Mr. Alexandrov has personally performed the following Google® search, the results of which are accurately shown below (See Declaration of Alexandrov):



The term "Playsets" is vague. And furthermore, there is no reference or meaning-connection to the term "Gym", which provides a distinctly different commercial impression.



The second half of the webpage shows word connections, but nothing synonymous to "gym".



The common meaning of "playsets" has become "outdoor playgrounds". See, this Google® search, but also notice the conspicuous absence of the alleged top manufacturer "Gorilla Playsets" on the first page of the Google® natural search results—*i.e.,* they only show-up as the eighth advertiser on the right-side. Note further that the top-rated terms are "playsets" and "playgrounds", and <u>that there are no</u> <u>"gym"-word terms, which clearly shows that outdoor play equipment is not synon-</u> <u>ymous or even related to any "gym" terms,</u> which (as Velex respectfully posits) are used for indoor and fitness meanings:



Other examples of "Gorilla" marks that reflect the type and expression of products sold on the Internet are shown below. Yet further, with over 900+ Gorilla marks in the USTPO database, mutual co-existence of "Gorilla" mark users in the marketplace is the rule -- not the exception, as PlayNation incorrectly argues. Manifestly, and despite using words and pictures that happen to feature a Gorilla, it is quite clear there are <u>vast differences</u> between these 900+ Gorilla marks, which render them unique and easily discernible from each other (as in the present case):


















**CORNING® GORILLA® GLASS**

Visually stunning, lightweight, and highly damage-resistant, Corning® Gorilla® Glass is changing the way the world thinks about glass. It helps protect the world's coolest smartphones, tablets, PCs, and TVs from everyday wear and tear.

Is it on yours? »



















## VII. <u>Summary of the Uncontestable Evidence Comprising *Lone Star*[13] Factors</u>

The following chart summarizes the uncontestable evidence of record (See

Declaration of Alexandrov):

| *Lone Star* Factor(s) | Analysis | Favors Which Party |
|---|---|---|
| (1) the type, *i.e.*, strength, of the mark; | Both parties have Registrations: USPTO Class 028 category has 30 gorilla+ marks already including the primary and solitary word "Gorilla" | Velex |
| (2) the similarity between the marks; | "GYM" versus "PLAYSETS"; logos entirely different in major ways (See comparison and analysis | Velex |

[13] *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 366 (11th Cir. 1997).

| | of "Gorilla" themed logos in general, *supra*) | |
|---|---|---|
| (3) the similarity of the products the marks represent; | Novel Indoor adult door-way exercise equipment with family attachment <u>versus</u> traditional outdoor children's swing sets; and vastly different pricing showing a high level and degree of sophistication of the buyers that can easily tell the difference between the products, the origin of the products, and the companies behind the products | Velex |
| (4) similarity of the parties' retail outlets and purchasers; | Internet and TV only <u>versus</u> dealer networks | Velex |
| (5) the similarity of advertising media; | Internet and TV only <u>versus</u> Intent and Dealer advertising | Velex |
| (6) the defendant's intent; and | Obtained and relies upon the grant of a federal trademark registration by the USPTO | Velex |
| (7) any evidence of actual confusion. | **None** -- after 2+ years and thousands of Velex products sold as well as thousands of Playsets sold. **Not one example** of actual confusion has been cited by Gorilla Playsets which clearly shows statistical significance that there is no confusion after 2 years of mutual sales by each company. | Velex |

## **Conclusion**

PlayNation's motion for summary judgment misconstrues the facts – over-and-over again -- and also over-reaches at almost every single point of fact or law. Inasmuch as PlayNation had at all times been advised that Velex would present its proper motion for summary judgment at the appropriate time, PlayNation's inter-position of an intervening motion is a simple and transparent attempt at a pre-emptive strike, and is to be exposed as such. PlayNation has no viable case here.

Moreover, PlayNation has filed for summary judgment on the very day set for the production of information that had been gathered at considerable effort by Velex, and because of PlayNation's incessant requests for additional information. The filing for summary judgment before receiving this copious information from Velex, further proves that PlayNation places no value on this information for their case – and thus, was simply forcing the much smaller Velex to spend time and money.

This point alone proves that PlayNation realizes that no further information would be helpful to their case and that their case has already exhausted itself from constant over-reach. Moreover, the utter poverty of PlayNation's statement of facts further shows that there is no basis for this lawsuit.

On the uncontested facts of Record -- and indeed, most of which are pictori-ally set forth as a "publication" to the public on the Internet -- PlayNation's unsup-

ported and illogical motion for summary judgment should be denied, and Velex' cross-motion for summary judgment should be granted, and the same are respect-fully requested.

Respectfully submitted this 9th day of January, 2015,

Respectfully submitted,

*/s/ Robert M. Ward*
Robert M. Ward
(Georgia Bar 775401)
3455 Peachtree Road NE
Floor 5
Atlanta, GA 30326
Telephone: (404) 606-6480
Facsimile: (203) 220-8497
rward@dilworthip.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Court's CM/ECF. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ RM Ward*

*One of the Attorneys for Defendant*