IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PLAYNATION PLAY SYSTEMS, INC. d/b/a GORILLA PLAYSETS,<br><br>    Plaintiff,<br><br>v.<br><br>VELEX CORPORATION d/b/a GORILLA GYM,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:14-CV-01046-RWS |

## ORDER

This case comes before the Court on Plaintiff's Motion for Summary Judgment [36], Defendant's Motion for Summary Judgment [40], and Defendants' Motion for Leave to Sur-Reply [45].

## Background

Plaintiff PlayNation Play Systems, Inc. manufactures and sells children's outdoor playground equipment using the trademark "Gorilla Playsets." (Pl.'s Statement of Undisputed Facts in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s SOMF"), Dkt. [36-2] ¶ 3.)  Defendant Velex Corporation sells doorway pull-up bars for all ages, as well as attachable accessories for children,

including swings, trapezes, and rings, using the trademark "Gorilla Gym." (Id. ¶¶ 25, 30–32.) Plaintiff brings this action, alleging that Defendant has infringed on Plaintiff's registered trademark by "using the nearly identical mark for nearly identical goods, which is likely to cause confusion," and requesting a permanent injunction against Defendant. (Pl.'s Br. in Supp. of Mot. for Partial Summ. J. ("Pl.'s MSJ Br."), Dkt. [36-1] at 2, 23.) Plaintiff now moves for partial summary judgment [36]. Defendant cross-moves for summary judgment on the trademark infringement claim. (Def.'s Br. in Opp'n to Pl.'s MSJ & in Supp. of Def.'s Mot. for Summ. J. ("Def.'s MSJ Br."), Dkt. [40].)

## Discussion

### I. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,


together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The applicable substantive law identifies which facts are material. Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences that are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

AO 72A
(Rev.8/82)

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

**II.   Analysis**

Liability for infringement under the Lanham Act requires proof that Defendant "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in a way that "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).  The Lanham Act protects the public from confusion in the marketplace by prohibiting the unauthorized use of registered trademarks or service marks. Id. "In order to prevail on a trademark infringement claim based on a federally registered mark, the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to

4

deceive." Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007) (internal citation omitted).

The parties do not dispute that Plaintiff's mark is valid and has priority over Defendant's mark. (Pl.'s SOMF, Dkt. [36-2] ¶ 8.) "Thus we must address: (1) whether [Plaintiff] presented sufficient evidence of an unauthorized "use" of the mark by [Defendant] at the retail level; and (2) if so, whether the evidence was sufficient to create a genuine issue of material fact as to a likelihood of confusion at the retail level." Optimum Techs., 496 F.3d at 1241–42.

When evaluating whether a likelihood of confusion exists in a trademark infringement action, the Eleventh Circuit has outlined factors for consideration:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1220 (11th Cir. 2008). Of these factors, the type, or strength, of the mark and evidence of

5

actual confusion are the most important. <u>Frehlin Enters., Inc. v. Int'l Select Grp., Inc.</u> 192 F.3d 1330, 1335 (11th Cir. 1999).

"Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law." Alliance Metals, Inc., v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000). The Court can make a determination when "the plaintiff's proof on this issue was so strong that any finding other than one of likely confusion would be clearly erroneous." Conagra, Inc. v. Singleton, 743 F.2d 1508, 1514 (11th Cir. 1984). But "in many cases, summary adjudication would be impermissible, either because of the complexity of the issues presented or because the evidence does not permit an easy resolution." <u>Rolls-Royce Motors Ltd. v. A & A Fiberglass, Inc.</u>, 428 F. Supp. 689, 694-95 (N.D. Ga. 1976).

The Court now considers whether the record in this case supports determination by summary judgment. The Court begins by analyzing the two most important factors: the strength of the mark and evidence of actual confusion.

A. <u>Strength of Plaintiff's Mark</u>

"The strength of a trademark is essentially a consideration of

6

distinctiveness." Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1310 (N.D. Ga. 2008) (quotation omitted). "The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives. There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. The categories are based on the relationship between the name and the service or good it describes." Frehling Enters., Inc., 192 F.3d at 1335 (internal citation omitted). "Arbitrary" is the strongest category. Id.

    Plaintiff argues that its mark is "at least suggestive." (Pl.'s MSJ Br., Dkt. [36-1] at 17.) "Suggestive marks subtly connote something about the service so that a customer could use his or her imagination and determine the nature of the service." Freedom Sav. Loan Ass'n v. Way, 757 F.2d 1176, 1182 n.5 (11th Cir. 1985). For example, "penguin" would be suggestive for a brand of refrigerators. Id. By analogy, Plaintiff asserts that "Gorilla Playsets" is suggestive because "[t]he products sold under the mark are not designed for or used by gorillas. The mark requires, at a minimum, some imagination, thought, and perception to reach the conclusion that it is used in connection for the goods listed in the registration." (Id.)

7

The Court considers the mark "Gorilla Playsets" as a composite and not as isolated components. See Estate of P.D. Beckwith, Inc., v. Comm'r of Patents, 252 U.S. 538, 545–46 (1920) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail.") The Court agrees with Plaintiff that the term "gorilla" is suggestive. Customers can use their imagination to connect "gorilla" with equipment designed for climbing and swinging in the same way that they can connect "penguin" with refrigerators designed for cooling food and beverages. But the term "playset" is generic; it simply identifies the type of product Plaintiff sells. In Banff, the Second Circuit affirmed that a plaintiff's use of the mark "Bee Wear" combined a generic and arbitrary mark, "resulting in a suggestive or arbitrary mark." Banff, Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486, 489 (2d Cir. 1988). The Court finds the reasoning in Banff persuasive, and using the same logic, finds that Plaintiff's use of the mark "Gorilla Playsets" combines a generic and suggestive mark, resulting in a descriptive or suggestive mark.

If Plaintiff's mark straddles the line between "descriptive" and "suggestive," the first factor could weigh in Defendant's favor. But the

8

strength of Plaintiff's mark can be enhanced by extraneous circumstances, such as the degree of third-party use of Plaintiff's mark. Frehling, 192 F.3d at 1336. Limited third-party use enhances the strength of the mark, making it more distinctive, and therefore more easily recognized by consumers. Frehling, 192 F.3d at 1336. "The proper inquiry is whether the third party use *significantly* diminishes the public's perception that the mark identifies services connected with the owner." Trilink, 583 F. Supp. 2d at 1312 (quotation omitted).

Defendant asserts that Plaintiff's mark is diminished because there are thirty other federally registered marks in the USPTO Class 028, for manufactured textiles, that include the primary and solitary word "gorilla." (Def.'s MSJ Br., Dkt. [40] at 21.) The Court finds this insufficient to diminish Plaintiff's mark. "The significance of third party use is evaluated based on the entire name and symbol, the type of business in which it is used, and geographic location." Trilink, 583 F. Supp. 2d at 1312 (quoting Breakers of Palm Beach, Inc., v. Int'l Beach Hotel Dev., Inc., 824 F. Supp. 1576, 1583 (S.D. Fla.1993) (finding that twelve uses within the state of Florida of "the Breakers" as part of properties' business names did not diminish the plaintiff's trademark "The Breakers")).

9

Thirty marks that simply share the word "gorilla" do not diminish Plaintiff's mark when it is considered in its entirety, i.e., the entire name and symbol. Additionally, none of the marks presented to the Court are for play equipment or the like. USPTO Class 028 for manufactured textiles spans a vast array of businesses. "Use of the same or similar marks by third parties in unrelated businesses does not diminish the distinctiveness of a mark in a particular field." Gold Kist Inc., 708 F. Supp. at 1298.

The Court also looks to the extent of use by the mark holder as a measure of consumer recognition of the mark, and considers the amount invested in advertising and promotion. Id. at 1297. The more that a mark has been promoted and the longer that it has been in use, the stronger the mark is likely to be. Id.; Trilink, 583 F. Supp. 2d at 1313. The parties agree that Plaintiff "has prominently used and promoted its mark through extensive nationwide and local advertising, marketing, and sales of playground equipment and related accessories" since 2002. (Pl.'s SOMF, Dkt. [36-2] ¶ 15.) Such widespread use enhances the strength of Plaintiff's mark.

"Another indicator of the strength of a mark is whether it is incontestable because incontestability enhances the strength of a mark." Bd. of Regents of

the Univ. Sys. of Georgia v. Buzas Baseball, Inc., 176 F. Supp. 2d 1338, 1351 (N.D. Ga. 2001). The incontestability of Plaintiff's mark is not disputed by the parties. (Pl.'s SOMF, Dkt. [36-2] ¶ 11.) Accordingly, the Court finds that the strength of Plaintiff's mark is enhanced beyond its classification because of limited third-party use, the extent of Plaintiff's use of the mark, and incontestability.

### B.   Actual Confusion

Of all the factors in the likelihood of confusion analysis, actual confusion is "the most weighty consideration." Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 936 (11th Cir. 2010). "It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion." Frehling, 192 F.3d at 1340. The actual confusion inquiry involves both the number of instances of confusion and the kind of person confused. Caliber Auto., 605 F.3d at 936. "All potential consumers of the relevant product or service, including middlemen, can inform the inquiry, and the ultimate consumers deserve special attention." Id. at 936–37. Ultimately, "the quantum of evidence needed to show actual confusion is relatively small." Id. at 937. Actual confusion by a few customers is evidence

11

of likelihood of confusion by many customers. Freedom Sav., 757 F.2d at 1185.

In a trademark infringement case, actual confusion can be shown through reported instances of individuals who have actually become confused about the source of the products or services because of the similarities between the parties' trademarks. Popular Bank of Fla. v. Banco Popular de Puerto Rico, 9 F. Supp. 2d 1347, 1360 (S.D. Fla. 1998). Such instances of confusion include consumer inquiries regarding possible affiliation between the parties or attempts to purchase goods or services actually offered by the other party. Id. Confusion can also be shown by misdirected correspondence or telephone calls. Id.

In its Motion for Summary Judgment, Plaintiff puts forth no evidence of actual confusion. But in its reply brief, Plaintiff alleges that since filing the motion, Plaintiff has become aware of actual incidents of confusion. (Pl.'s Reply Br. in Supp. of Pl's MSJ, Dkt. [43] at 1.) In support, Plaintiff submits the declarations of three employees alleging that "[o]n at least nine occasions over the past two months, consumers have called [Plaintiff's] toll-free telephone number looking to buy [Defendant's] Indoor Playground Package."

12

(Id. at 3.)

Courts generally do not consider issues raised for the first time in a reply brief, but the Court has the discretion to do so.  See Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1352 n. 11 (11th Cir.2009).  Given the significance of actual confusion in the Court's determination of trademark infringement, the Court will consider the declarations submitted by Plaintiff and **GRANT** Defendant's Motion for Leave to Sur-Reply [45].

In its Sur-Reply, Defendant challenges the credibility of the declarations and raises the issue of potential bias because the declarants are employees of Plaintiff.  (Def.'s Sur-Reply Br. in Opp'n to Pl.'s MSJ, Dkt. [45-1] at 2–4.)  The Court has found that "[t]his type of bias affects the weight of the Plaintiff's evidence and should be resolved by a fact-finder."  Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp., 2010 WL 2662720, at *8, 10 (N.D. Ga. June 30, 2010).  By disputing the credibility of Plaintiff's evidence of actual confusion, the parties raise a genuine issue of material fact.

C.   Evaluation of the Factors

The Eleventh Circuit has discussed how to weigh the seven "likelihood of confusion" factors, noting that the process "entails more than the

13

mechanistic summation of the number of factors on each side." Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 649 (11th Cir. 2007). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. They are also interrelated in effect. Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." Id. at 650 (internal citations omitted).

In the present case, the Court finds that the parties have raised a genuine issue of material fact on the most significant factor: actual confusion. This is significant enough for the Court to conclude at this point in its analysis that summary adjudication is not appropriate. Accordingly, the Court must **DENY** both parties' Motions for Summary Judgment.

## Conclusion

Based on the foregoing, Defendant's Motion for Leave to File a Sur-Reply [45] is **GRANTED**, Plaintiff's Partial Motion for Summary Judgment [36] is **DENIED**, and Defendant's Cross-Motion for Summary Judgment [40] is **DENIED**. The parties shall submit a proposed consolidated pretrial order within 30 days of the entry of this Order.

**SO ORDERED**, this 6th day of July, 2015.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)